**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF VIRGINIA**
**LYNCHBURG DIVISION**

| | | |
|---|---|---|
| In re: TAMMY ANN FULLER, | ) | Case No. 05-64905 |
| | ) | |
| Debtor, | ) | |
| | ) | |
| TAMMY ANN FULLER, | ) | Adv. No. 06-06017 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| THE SALLIE MAY FUND, INC., | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |
| | ) | |
| TAMMY ANN FULLER, | ) | Adv. No. 06-06018 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| FEDERAL DIRECT LOAN PROGRAM, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## **JUDGMENT**

For the reasons stated in the accompanying memorandum, it is ORDERED, ADJUDGED

AND DECREED that:

JUDGMENT shall be and hereby is entered in favor of the plaintiff and against the

1

defendants. The debts owed by the plaintiff to the defendants arising from loans made for the purpose of permitting the plaintiff to attend an institution or institutions of higher learning are discharged by the discharge order in bankruptcy case no. 05-64905.

Upon entry of this Judgment the Clerk shall forward copies David Crandell, Esq., counsel for the Plaintiff, Robert Deichmeister, Esq., counsel for Sallie Mae Fund, and Thomas Eckert, Esquire, counsel for the Federal Direct Loan Program.

Entered on this  17th  day of January, 2007.

_____
William E. Anderson
United States Bankruptcy Judge

**UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION**

| | | |
|---|---|---|
| In re: TAMMY ANN FULLER, | ) | Case No. 05-64905 |
| | ) | |
| Debtor, | ) | |
| | ) | |
| TAMMY ANN FULLER, | ) | Adv. No. 06-06017 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| THE SALLIE MAY FUND, INC., | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |
| TAMMY ANN FULLER, | ) | Adv. No. 06-06018 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| FEDERAL DIRECT LOAN PROGRAM, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM**

This matter comes before the court by way of two complaints filed by Tammy Ann Fuller ("the Plaintiff"), one against the Sallie May Fund, Inc., ("Sallie Mae") and one against Federal Direct Loan Program ("FDLP"). In the complaints, the Plaintiff seeks a declaration that the debts owed to Sallie Mae ("the Sallie Mae Debt") and FDLP ("the FDLP Debt") are dischargeable, 11 U.S.C. § 523(a)(8) notwithstanding. Even considering the options afforded to the Plaintiff by the William B. Ford Loan Program, the Court concludes that being required to

1

repay the two debts would constitute a substantial hardship on the Plaintiff.  Judgment shall be entered in favor of the Plaintiff.

*Facts.*

From 2000 until 2004, the Plaintiff received funds from Sallie Mae and from FDLP.  As of July 25, 2006, she owed Sallie Mae $31,224.00 including principle and interest.  The current regular monthly repayment amount on the Sallie Mae debt is $383.34.  As of September 19, 2006, she owed FDLP $13,492.08 including interest and principle.  She used the funds to pay tuition and other school expenses at Old Dominion University.   She did not attend Old Dominion in person, but instead took courses through video presentations and on a computer through Patrick Henry Community College.   She testified that she has completed the requirements for a B.A. in elementary education, but has not yet received the actual degree.

When the repayment period began, the debtor received a forbearance until she filed her bankruptcy petition.   She has made no payments toward the debt owed to either defendant.

*Discussion*

This Court has jurisdiction over this matter.  28 U.S.C. § 1334(a) & 157(a).  This is a core proceeding.  28 U.S.C. § 157(b)(2)(A) & (I).   Accordingly, this court may render a final judgment.  The Plaintiff seeks an order declaring that the Sallie Mae Debt and FDLP Debt are dischargeable in her chapter 7 case. The Defendants assert that they are excepted from discharge by 11 U.S.C. § 523(a)(8) which provides:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt--
> . . .
>> (8) for an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds

2

> received as an educational benefit, scholarship or stipend, unless excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents;

In this case, the parties agree that the Debt arises from a loan for an educational benefit guaranteed by a governmental unit. Accordingly, the burden shifts to the Plaintiff to demonstrate that excepting the Debt from discharge will impose an undue hardship on her and her dependents.

Under the undue-hardship test, a Plaintiff must establish (1) that he or she cannot maintain a minimal standard of living for himself or herself and his or her dependents, based upon his or her current income and expenses, if he or she is required to repay the student loans; (2) that additional circumstances indicate that his or her inability to do so is likely to exist for a significant portion of the repayment period of the student loans; and (3) that he or she has made good faith efforts to repay the loans. See Brunner v. New York State Higher Educ. Servs. Corp., 831 F.2d 395, 396 (2nd Cir. 1987) (per curiam). (Cited with approval by the Fourth Circuit Court of Appeals in Ekenasi v. The Education Resources Institute, et al. (In re Ekenasi), 2003 WL 1879012 (4th Cir. April 16, 2003) and adopted by the Fourth Circuit Court of Appeals in Educational Credit Management Corporation v. Frushour (In re Frushour), 433 F.3d 393, 400 (4th Cir. 2005)).

The burden is on the Plaintiff to satisfy each element of the Brunner test before the student loan may be discharged. See In re Faish, 72 F.3d 298 (3rd. Cir. 1995). The Plaintiff must prove each element by a preponderance of the evidence. Frushour, 433 F.3d at 400. If the court finds against the Plaintiff on just one of the three elements, the inquiry ends and the student loan is deemed non-dischageable. See Alderete v. Educational Credit Management Corporation ( In re Alderete), 2005 WL 1525260 (10th Cir. 2005).

*A.     The Debtor's Current Standard of Living*

Under the first prong of the Brunner test the Plaintiff must demonstrate "that [s]he cannot maintain a minimal standard of living for himself and [her] dependents, based upon [her] current income and expenses, if [s]he is required to repay the student loans". Ekenasi 325 F.3d at 546. The test requires the court to examine the debtor's current income and expenses and determine whether there are funds available to pay the student loans.

> That is, before receiving a discharge of student loans the debtor is required to demonstrate that, given his or her current income and expenses, the necessity of making the monthly loan payment will cause his or her standard of living to fall below a "minimal" level.

Brunner 46 B.R. at 754 (Summarizing the then-existing law with approval and incorporating it as the first prong in the test.)

The Plaintiff scheduled total monthly gross income for herself and her husband in the amount of $ 3,539.50. She scheduled total net income in the amount of $2,028.00. She scheduled expenses in the amount of $2,295.00.

The Plaintiff currently earns $7.15 per hour, or approximately $14,872.00 per year, as teacher in a pre-school program. She earned $6,882.00 in 2003, $8,321.00 in 2004, and $12,410.00 in 2005.[1] Mr. Fuller has worked as a local truck driver for the same employer since 2002. His income during 2003 was $22,739.00, during 2004 was $23,238.00 and during 2005 was $26,636.00.[2] In 2005 the total Adjusted Gross Income of the Plaintiff and her husband on their federal tax return was $39,047.00. This equals $3,253.91 per month. The Plaintiff scheduled her total family gross income at an amount that is $285.59 more than the 2004 tax

---

[1]     Sallie Mae Exhibit 5, tax returns and W-2 Forms for the Plaintiff and her husband.

[2]     Ibid.

4

return reflects.

The Plaintiff scheduled payroll taxes and social security deductions in the total amount of $637.00 ( = $231.83 + $405.17).   The Plaintiff also scheduled a $216.67 per month for daycare expense.   She also scheduled a child support deduction in the amount of $342.33 and an insurance premium deduction in the amount of $262.17 per month for Mr. Fuller.[3]  The only expenses that the Defendants questioned are $50.00 for cable television and $50.00 for recreation each month. If these two amounts are eliminated from the budget, the Plaintiff's family expense total $2,195.00 per month, an amount that renders a monthly budget deficit of $167.00.

The Defendants observe that the Plaintiff is eligible to make certain minimum payments against the two debts through the William D. Ford Direct Loan Program.  Alternative repayment options under the program include the standard repayment plan, extended repayment plan, gradual repayment plan, and income sensitive repayment plan.   None of the parties presented evidence of the amount that the Plaintiff would be required to pay under any of the four options. The Court estimates the minimum payment to be that available under the graduated repayment option, which amount is $257.30[4].

The Plaintiff is currently facing a monthly budget deficit of $167.00.  Neither of the Defendants suggested that any of the Plaintiff's expenses were excessive, other than the cable and recreation expenses which have already been removed from the calculation.  A review of the

---

[3]  The Plaintiff's husband designates the premium as "Cafeteria Plan" on his pay advice.

[4]  This amount is determined by using the calculator provided at http://www.ed.gov/offices/OSFAP/DirectLoan/RepayCalc/dlentry2.html.  The variable used to determine this payment amount are (1) a total debt of $44,716.00, (2) total annual household income of $42,468.00, (3) an interest rate of 6.8%, and (4) a family size of three. The other payment options varied from $310.36 to $514.59 per month. The interest rate of 6.8% is based on statement on the website that such a rate is available.  It is not clear whether the Plaintiff would qualify for this low rate.

major expense reveals that the Plaintiff simply has no room in her budget at this time to make such a payment. The Plaintiff and her husband are paying $340.00 in rent, an amount that is Spartan by any standard. They own two vehicles, a 1994 Toyota Corolla with 300,000 miles on it and a 1999 Ford Explorer. The Corolla does not secure any debt. Mr. Fuller pays $284.00 per month on a debt secured by the Ford Explorer. The Plaintiff scheduled only $100.00 per month for non-food expenses for the three-year old child. Each of these expenses is very reasonable in both character and amount. Indeed, it is not clear how the Plaintiff and her husband meet their expenses as it is.[5] It is difficult to imagine how the Plaintiff and her husband could generate enough additional disposable income to pay even the minimum amount required under the William D. Ford Direct Loan Program. The Plaintiff has met her burden of proof on the first element of the Brunner Test.

### B. *Change in Circumstances*

Under the second prong of the Brunner test, the Plaintiff must demonstrate "that additional circumstances indicate that her inability to [repay the student loans] is likely to exist for a significant portion of the repayment period of the student loans". Ekenasi 325 F.3d at 546. In Frushour, the Court held that this second factor is a "demanding requirement" that necessitates that a "certainty of hopelessness" exists that the debtor will not be able to repay the student loans. Frushour, 433 F.3d at 401 (Citations omitted.). A debtor might meet this prong of the Brunner test if he or she can show "illness, disability, lack of useable job skills, or the existence of a large number of dependents." Id. (Quoting Oyler v. Educ. Credit Mgmt Corp. (In re Oyler), 397 F.3d 382, 386 (6th Cir. 2005)).

---

[5] The Plaintiff and her father testified that he occasionally provides her with financial assistance.

In order to meet the second prong of the <u>Brunner</u> test, a debtor is required to seek a position in the field for which he or she has been trained, barring some physical or mental disability preventing him or her from doing so. In <u>Brunner</u>, the debtor, who had incurred debt in order to pay for a B.A. and an M.A. in Social Work, sought to have declared non-dischargeable a student loan debt because of "her shaky finances and her unsuccessful efforts to find work following graduation", before she had obtained employment in her chosen field. <u>Brunner</u> 46 B.R. at 753. The Court's concern was that "[e]xtrapolation of [the debtor's] current earnings is likely to underestimate substantially [his or her] earning power over the whole term of loan repayment." <u>Brunner</u> 46 B.R. at 756. The debtor's failure to obtain employment before seeking to discharge the student loan was the fact that led the court to conclude that the second prong of the test had not been met.

This second prong also requires that the court analyze the debtor's future income and expenses to determine whether the debtor has the ability to make changes that will increase his or her disposable income. <u>See</u> <u>United States Department of Education v. Gerhardt (In re Gerhardt)</u>, 348 F.3d 89 (5th Cir. 2003). A debtor, then, is required to pursue not only the profession for which he or she is trained, but also any other profession that might generate income that would facilitate payment of the student loan debt.

The Plaintiff argues that neither she nor her husband can reasonably anticipate an increase in income in the future. The Plaintiff obtained her education in order to pursue a career in elementary education. In order to qualify as a teacher in a public school, the Plaintiff must pass the Praxis exam. She has taken it three times, both on line and in person, and has yet to pass. She has applied to elementary schools but has been told that they will not hire her unless she passes

7

the Praxis exam.  The Plaintiff testified that she does not take tests well, in part because she has a heart murmur that causes her to tire easily and has restricted her physical activity since childhood.

The Plaintiff also testified that her husband has attempted to improve his income by taking the Class A CDL (Commercial Drivers License) examination to qualify for a better paying truck-driving job, but has been unable to pass that test after taking it "multiple times", because he has a learning disability.[6]

Nor is the Plaintiff's financial budget one that she will be able to trim in the foreseeable future.  If anything, one would expect her financial condition to deteriorate.  The $100.00 for expenses for her three-year old child will doubtless increase as the child grows.  She is paying $340.00 in rent.  One would expect that to increase in the future.  Her family pays $284.00 in car payments.  Given that their two vehicles are seven and twelve years old, any reduction in car payments will be more than offset by an increase in vehicle repair costs, if not the need to purchase another vehicle.  The Plaintiff scheduled only $400.00 per month for food for a family of three.  Her husband's child support payment will be in effect for another twelve years and may increase if his income increases.

The debtor and her husband have one child who is under three years old.  Her husband's

---

[6]    See Transcript: P: 15:13 to 16:1.  Counsel for FDLP broached the subject:

Q:    [Counsel]  Okay.  All right.  Now, just a couple other questions.  What does your husband do?
A:    [Plaintiff] He drives for local truck company.
Q:    What type of truck company is that?
A:    It's a waste management.
Q:    Okay.  And has he passed the Class A –
A:    No, Sir.
Q:    - - CDL exam?
A.    No.
Q:     Has he tried?
A:    Yeah, multiple times.
Q:    Okay.  Do you know why he's unable to pass that exam?
A:    He's got a learning disability also.

six-year old child lives with them every other weekend. The three-year old has asthma and receives treatments at least two or three times a day through a breathing machine. The treatments cost the Plaintiff approximately $50.00 per month. Additionally, the Plaintiff and her husband take the three-year old to the Doctor approximately once a month for emergency visits.

The Plaintiff and her husband have not taken a vacation in the four years that they have been married. He receives one week of vacation per year, but he usually works that week in order to generate additional income.[7]

And it is worth noting that the Plaintiff's expenses do not include any contingency for emergencies, a real possibility in light of the fact that the Plaintiff has a three year-child who suffers from asthma and that she and her husband rely on vehicles that are seven and twelve years old.

The Plaintiff's inability to pass the Praxis Exam after three attempts, coupled with her physical condition, indicates a lack of useable job skills. The lack of usable job skills, coupled with the size of the debt compared with her income and the small probability of any increase in income, causes her to face a certainty of hopelessness. The Plaintiff has met her burden of proof on the second prong of the Brunner test.

*C. Good Faith and The Plaintiff's Repayment Efforts.*

The third prong of the Brunner test requires the Plaintiff to demonstrate that she has made good faith efforts to repay the loans. In this case, the Plaintiff has not made any payments toward the two debts. So the threshold issue is whether this necessarily precludes the Plaintiff from demonstrating good faith. It does not. The Plaintiff's efforts to repay her student loans must be

---

[7] Transcript: P. 17:3-24.

considered in light of her circumstances during the payment period. Under certain circumstances, a debtor may demonstrate good faith by facts other than payments to her creditors.

The Plaintiff engaged in her college studies with the expectation that she would be prepared for her intended career, that of an elementary school teacher. She completed the course of study by the institution that accept the tuition payments. It is reasonable that her completion of the course work should necessarily prepare her to pass an examination that is necessary before she is considered for employment as a teacher.

The Plaintiff has taken that examination three times and failed. The Court is convinced, by her testimony, that the Plaintiff wants to pass the Praxis Exam and that she has given every effort toward that end. Her failure to pass the Praxis Exam was no fault of any act of the Plaintiff. Without passing the exam, she cannot be employed in the field for which she was trained. Without being employed she cannot afford to make the loan payments.

These facts notwithstanding, the Plaintiff contacted the Defendant(s) and attempted to make some payment. When counsel for the FDLP asked her why she had not paid even $10.00 per month, the Plaintiff answered that she did not have the money to pay. When the Court asked if she had called the Defendant(s), whether she had been in contact with them, she answered "Yes Sir." and "They didn't want to work with me." The Court asked, "They wouldn't work with you? Wouldn't allow you to pay $10.00 a month?" The Plaintiff responded, "No, Sir."[8]

The Court concludes that the Plaintiff demonstrated good faith by completing her degree requirements, attempting to pass the exam three times, and attempting to pay the Defendants some small amount. The Plaintiff has met the burden of proof on the third prong of the Brunner

---

[8] Transcript: P. 43:24 to 44:20.

test.

## *Conclusion*

A debtor's burden of proof under 11 U.S.C. § 523(a)(8) and the Brunner test is very difficult to meet.   This difficulty is offset by options offered to a debtor under the William D. Ford Loan Program.  In this case, the Plaintiff cannot now make the minimum payments under that program and will not be able to make them in the foreseeable future.   The Court concludes that she has done all possible to put herself in a position to make those payments, but has, through no fault of her own, been unable to do so.  The two debts owed to the Defendants by the Plaintiff are dischargeable.

An appropriate judgment shall issue.

Upon entry of this Memorandum the Clerk shall forward copies David Crandell, Esq., counsel for the Plaintiff, Robert Deichmeister, Esq., counsel for Sallie Mae Fund, and Thomas Eckert, Esquire, counsel for the Federal Direct Loan Program.

Entered on this  17th  day of January, 2007.       _____
                                                                                William E. Anderson
                                                                               United States Bankruptcy Judge